# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CANDICE R. CLEMONS, | : | Case No. 3:19-cv-00206 |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : : | |
| | : | |
| Defendant. | : | |
| | : | |

## DECISION AND ENTRY

### I. Introduction

Plaintiff Candice R. Clemons' health problems has led her to apply three times for Supplemental Security Income and once for Disability Insurance Benefits. Different administrative law judges with the Social Security Administration have denied each of her applications by concluding that she was not under a disability. (Doc. #8, *PageID* #s 239-47, 252-65).

Plaintiff protectively filed her most recent application for Supplemental Security Income on December 9, 2015.[1] She asserted that she was under a disability, starting on August 2, 2014, due to degenerative disc disease, advanced tachycardia, high blood pressure, asthma, diabetes, a knee disorder, seizures, and migraines. Administrative Law

---

[1] An application is considered "protectively" filed on the date the applicant first contacted the Social Security Administration about benefits. Because this protectively filed date is earlier than the actual filing date, it helps successful applicants by gaining for them a longer period of Supplement Security Income. *See* http://www.ssa.gov/glossary; *see also Newsom v. Soc. Sec. Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004) (Supplemental Security Income is payable starting one month after the application was filed).

Judge (ALJ) Deborah F. Sanders, like the earlier ALJs, denied Plaintiff's application on the ground that she was not under a disability.

In the present case, Plaintiff challenges ALJ Sanders' nondisability decision, arguing that it lacks substantial supporting evidence. She seeks a remand to the Social Security Administration for payment of benefits, or at a minimum, for further administrative proceedings. The Commissioner asks the Court to affirm ALJ Sanders' nondisability decision.

## II.     Background

Plaintiff was 39 years old on the date she filed her most recent application for Supplemental Security Income. This placed her in the Social Security Administration's category of a "younger person." *See* 20 C.F.R. 416.963(c). She has a high school education.

A vocational expert testified at an administrative hearing that a hypothetical person with Plaintiff's functional limitations (as ALJ Knapp described her)—plus the need for a five-minute break during every hour of work—could not hold down a full-time job. (Doc. #8, *PageID* #232). The vocational expert further testified that a hypothetical person who is absent from work more than once a month could not perform a full-time job. *Id*.

ALJ Sanders and the Commissioner have sufficiently summarized the medical evidence of record. *Id*. at 68-72; Doc. #12, *PageID* #s 1267-73. Rather than repeat her summary, the pertinent evidence will be discussed when addressing the parties' arguments.

### III. ALJ Knapp's and ALJ Sanders' Decisions

Plaintiff protectively filed her second application for Supplemental Security Income on April 6, 2012. *Id.* at 252. In that application, she asserted that she had been under a benefits-qualifying disability starting on "March 1, 2007, due to back problems, fibromyalgia, high blood pressure, tachycardia, spinal arthritis, tissue spasms in the spine, degenerative disc disease, ruptured sciatic disc, bulging discs, and cervical strain." *Id.*

ALJ James I.K. Knapp denied Plaintiff's second application for benefits. Doing so, he applied the Social Security Administration's five-step evaluation procedure. *See* 20 C.F.R. § 416.920(a)(iv). His main findings began at step two with his recognition that Plaintiff suffered from the severe impairments of "lumbar degenerative disc disease; cervical degenerative disc disease; left knee effusion and partial tears; and exogenous obesity." (Doc. #8, *PageID* #255). He found at step three that Plaintiff did not automatically qualify for benefits.

At step four, ALJ Knapp assessed Plaintiff's residual functional capacity—or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—and found that she lacked many functional work abilities such as the ability to lift more than 10 pounds frequently or 20 pounds occasionally. The most pertinent of the many other limitations that ALJ Knapp described were Plaintiff's inability to "sit for more than one hour at a time or 8 hours total in a work day (with the opportunity for a five minute break or change in position hourly); [and] stand for longer than one hour at a time or six hours total in a work day (with the opportunity for a five minute break or change of position in standing hourly)." (Doc. #8, *PageID* #s 259-60).

3

These and other findings led ALJ Knapp to reject Plaintiff's claim that she was under a benefits-qualifying disability. He therefore denied Plaintiff's second application for benefits. *Id*. at 265.

ALJ Sanders was the next ALJ to review Plaintiff's disability status. Her pertinent findings began at step two of the sequential evaluation where she concluded that Plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine; cervical sprain, major motor seizures; essential hypertension; migraine headaches; asthma[;] mild mucoid degeneration with partial tear of the left knee; diabetes; and depressive disorder." *Id*. at 64. At step three, ALJ Sanders concluded that Plaintiff did not automatically qualify for benefits.

At step four, ALJ Sanders determined that Plaintiff had the residual functional capacity to perform light work with many limitations:

> she must alternate to sitting after every hour of standing and/or walking while remaining on task. [She] can sit up to eight hours per day with the ability to change positions after every hour of sitting while remaining on task. She can occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs. She can never climb ladders, ropes, or scaffolds, work at unprotected heights, or operate a motor vehicle. [She] can have occasional exposure to extreme cold or heat, wetness, humidity, or excessive vibration. She can perform simple, routine, short-cycled tasks, but not at a production rate pace and with no strict production quotas. [She] can occasionally interact with coworkers, supervisors, and the public. She can adapt to infrequent changes in the work setting that are gradually introduced and may be off task up to five percent daily.

*Id*. at 67. What stands out from ALJ Sanders' assessment of Plaintiff's residual functional capacity is what is missing: It does not include ALJ Knapp's finding that Plaintiff needed hourly five-minute breaks from sitting and standing or hourly changes in

4

position. *Id*. at 259.

At step five, ALJ Sanders determined that Plaintiff could perform a significant number of jobs that exist in the national economy. ALJ Sanders thus held that Plaintiff was not under a disability and not eligible to receive Supplemental Security Income. *Id.* at 73-74.

**IV.      Standard of Review**

The Social Security Administration provides Supplemental Security Income to individuals who are under a disability, among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—*i.e*., "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard

is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the ALJ's legal criteria for correctness—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     Discussion**

Plaintiff contends that ALJ Sanders reversibly erred by not including in her assessment of Plaintiff's residual functional capacity ALJ Knapp's finding that she was "essentially limited to light exertion 'with the opportunity for a five[-]minute break or change in position hourly.'" (Doc. #9, *PageID* #1253) (quoting, in part, *PageID* #259). This argument raises the specter of res judicata or collateral estoppel.

Neither res judicata nor collateral estoppel mandated ALJ Sanders to adopt all of the limitations ALJ Knapp described in his previous assessment of Plaintiff's residual

functional capacity.  *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).  This is because the application for Supplemental Security Income Plaintiff protectively filed in December 2015—the one ALJ Sanders considered—asserted a different claim than Plaintiff's application in 2012—the one ALJ Knapp considered. "'Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994….'  When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.* at 933 (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)).  But what type of review must an ALJ conduct?

A "fresh" review, as it turns out.  *Id*.  A fresh review considers both the previous and current administrative record, including the previous ALJ's decision.  In this manner, a fresh review remains faithful to the *principles* of res judicata—"finality, efficiency, and the consistent treatment of like cases."  *Id*.

> An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record.  That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, <u>albeit not binding</u>, consideration in reviewing a second application.

*Id*. (internal citations omitted; emphasis added).

A fresh review, moreover, is not controlled by collateral estoppel's fidelity to previously determined issues:

> [H]uman health is rarely static.  Sure as we're born, we age. Sometimes we become sick and sometimes we become better as time passes.  Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have "actually litigated and resolved"

whether a person was disabled at some later date.

*Id*.

Plaintiff acknowledges, "ALJ Sanders did arguably give the new and additional evidence a fresh look …." (Doc. #9, PageID #1254). But, Plaintiff argues, ALJ Sanders erred by not even attempting to explain how Plaintiff's "physical conditions had improved since ALJ Knapp's 2014 decision—thus warranting a <u>less</u> restricted RFC [residual functional capacity]—and instead merely vaguely found that the evidence did not support significantly worsened physical functioning." *Id*. at 1254-55 (emphasis in original) (citing *PageID* #70).

Plaintiff is correct to characterize ALJ Sanders' assessment of Plaintiff's residual functional capacity as less restrictive than ALJ Knapp's assessment. Compare their conclusions:

| **ALJ Sanders** | **ALJ Knapp** |
|---|---|
| Plaintiff "must alternate to sitting after every hour of standing and/or walking while remaining on task. [She] can sit up to eight hours per day with the ability to change positions after every hour of sitting while remaining on task." (Doc. #8, *PageID* #67). | Plaintiff could not "sit for more than one hour at a time or 8 hours total in a work day (with the opportunity for a five minute break or change in position hourly); [and] stand for longer than one hour at a time or six hours total in a work day (with the opportunity for a five minute break or change of position in standing hourly)." (Doc. #8, *PageID* #s 259-60). |

The significance of their difference of opinion emerges from the vocational expert's testimony that a hypothetical person with Plaintiff's functional limitations (as ALJ Knapp described her)—plus the need for a five-minute break during every hour of work—could not hold down a full-time job. *Id*. at 232. Consequently, if ALJ Sanders had found (like ALJ Knapp) that Plaintiff's residual functional capacity included this

8

five-minute break limitation, the vocational expert's testimony would have dictated the conclusion that Plaintiff was under a benefits-qualifying disability.

The Commissioner contends, "ALJ Sanders took a fresh look at Plaintiff's application for benefits and therefore reviewed the evidence in accordance with *Earley*." (Doc. #12, *PageID* #1276). The Commissioner maintains that ALJ Sanders' assessment of Plaintiff's residual functional capacity was not based on the conclusion that her condition improved after ALJ Knapp's decision. Instead, according to the Commissioner, ALJ Sanders found that Plaintiff's impairments and limitations during the more recent time period were *different* than they were during the time period at issue in ALJ Knapp's decision.

This distinction does not help the Commissioner. Certainly, ALJ Sanders' assessment of Plaintiff's work abilities and limits was different than ALJ Knapp's assessment. But ALJ Sanders' decision is reasonably read as finding that Plaintiff's work ability improved during the time after ALJ Knapp's decision. Although ALJ Sanders did not specifically use the word "improve," she doubtlessly thought Plaintiff's work ability had improved after ALJ Knapp's decision. If, as ALJ Sanders found, Plaintiff could sit or stand during an eight-hour workday without the need for an hourly five-minute break or change in position, then she was more able to work than ALJ Knapp had found. This is readily seen in the table above.

The Commissioner finds little, if any, significance in the fact that this is a "black swan" case—one involving a previous ALJ's finding that if presently adopted would result in an award of benefits. Plaintiff finds herself in this somewhat unusual black-

9

swan situation, prompting her to advocate in favor of ALJ Knapp's previous findings concerning her need for hourly five-minute breaks from sitting and standing or hourly changes of position. *See Earley*, 893 F.3d at 934 (explaining that *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 838 (6th Cir.1997) involved a black-swan situation).

It is definite that neither res judicata nor collateral estoppel required ALJ Sanders to adopt ALJ Knapp's findings. *See id.* at 933-34. The issue remains, however, whether substantial evidence supports ALJ Sanders' decision to omit ALJ Knapp's conclusion that Plaintiff needed hourly five-minute breaks from sitting and standing or hourly changes in position. *Id.* This substantial-evidence issue hinges on the significance of ALJ Knapp's previous finding—"'was [it] such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.'" *Id.* at 934 (quoting *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 477 (4th Cir. 1999)).

ALJ Knapp's finding that Plaintiff needed hourly five-minute breaks when sitting and standing or hourly changes in position was such an important and probative fact that its absence from ALJ Sanders' assessment of Plaintiff's residual functional capacity leaves it unsupported by substantial evidence. Its significance and probity are seen in the vocational expert's testimony (during ALJ Sanders' hearing) that no jobs would be available to a hypothetical person with this limitation. (Doc. #8, *PageID* #232). ALJ Sanders did not explain why she thought ALJ Knapp's hourly finding no longer applied to Plaintiff. Without an explanation, Plaintiff is left to wonder why ALJ Knapp's favorable finding was no longer valid. This returns the analysis to where it began with the significance of res judicata principles: "finality, efficiency, and the consistent

10

treatment of like cases ...." *Earley*, 893 F.3d at 933. These principles are frustrated by ALJ Sanders' finding that Plaintiff's physical functioning did not significantly worsen after ALJ Knapp's decision particularly when ALJ Sanders did not explain why Plaintiff no longer needed hourly five-minute breaks from sitting and standing. And without such an explanation by ALJ Sanders, her decision presents what one court has called the Administration's "bait-and-switch" approach to resolving a claimant-favorable, black-swan situation, like Plaintiff's—creating "a result reasonably perceived as unjust and fundamentally unfair." *Albright*, 174 F.3d at 478.[2]

Plaintiff asks this Court to award benefits to her rather than remand this matter to the Social Security Administration for further proceedings. Yet, because ALJ Sanders' decision pre-dated *Earley*, the Administration should be given an opportunity to conduct the fresh review *Earley* requires. *See Earley,* 893 F.3d at 934 ("All roads in the end lead to this destination: The ALJ should have another opportunity to review the application under the correct standard.").

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability decision reversed and this matter is remanded to the Social Security Administration for further proceedings pursuant to sentence 4 of 42 U.S.C. § 405(g); and

2. The case is terminated on the Court's docket.

September 18, 2020                              *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge

---

[2] *Earley*, 893 F.3d at 934, relies on the reasoning in *Albright*.